**SUNLAND SUPPLY COMPANY, Inc., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 5693.**

Court of Civil Appeals of Texas.

El Paso.

May 12, 1965.

Rehearing Denied June 2, 1965.

court in excusing a juror who had, on voir dire, indicated he might give more credence to appellant's side of the case, since he was acquainted with one of appellant's attorneys. From an incomplete record of what took place, it seems that the court then took over questioning of the juror and was told by the juror that the latter was not sure in his own mind that he could weigh the evidence without having his acquaintance with the attorney weigh with him, also. The court then excused the juror, and appellant complains that it was not allowed an opportunity to "rehabilitate" the venireman before he was excused. As stated, there is not here a complete record of the voir dire examination, nor is there any bill of exception taken on the complained-of point. It appears that this matter is governed by the decision in Bashrum v. Vinson, 330 S.W.2d 538 (Tex.Civ.App., 1959, ref., n.r.e.), and under such authority this first point of error is overruled.

By Points of Error Nos. II and III appellant complains of the action of the court in excluding his Exhibit No. 17 (a color picture of the interior corner of one room of the condemned building) and confining the jury's consideration of other exhibits (Nos. 1 through 16, 18 through 23 being other color photographs of the interior of the condemned building, and Nos. 25 through 34 being black and white photographs of both the interior and exterior of the building) to a consideration of only the walls, floors and ceilings portrayed in such exhibits. All these exhibits save one (the exterior photograph) show merchandise, being displayed for sale, storage or repair, and also office furniture and equipment, and in particular No. 17, the excluded photograph, shows only a portion of a room almost entirely taken up by merchandise displays and advertisements. We cannot see that the exclusion of this exhibit, under the circumstances, was harmful to appellant, especially so since it is cumulative of other exhibits which were admitted in evidence for properly limited consideration. Finally, the trial judge is accorded

Irion & Rash, El Paso, for appellant.

Waggoner Carr, Atty. Gen., Watson C. Arnold, T. B. Wright, Fred Spence, Asst. Attys. Gen., Austin, for appellee.

CLAYTON, Justice.

This is a condemnation case filed by the State of Texas as condemnor-appellee against the appellant corporation, condemnee. The award of the commissioners to appellant was $34,100.00. Objections and exceptions to this award were filed in the County Court at Law of El Paso County, Texas by the condemnee. No issue was made as to the right and power of the condemnor to take the property, the sole issue being that of the fair market value of the property taken. In a trial before a jury this single issue was answered, "$35,-500.00." From judgment on this finding, condemnee appealed.

In appellant's first point of error, objection is made to the action of the

considerable discretion in the admission or exclusion of photographic evidence. Texas Law of Evidence, McCormick and Ray, Vol. 2, § 1465, pps. 320, 321. City of Fort Worth v. Barlow, 313 S.W.2d 906, 913 (Tex.Civ.App., 1958, ref., n.r.e.); State v. Clarke, 383 S.W.2d 953 (Tex.Civ.App., 1964, n.w.h.). The second and third points of error are overruled.

By Point of Error No. IV appellant complains of the action of the court in excluding as an exhibit a roughly drawn plat or diagram of the floor plan of the property in question on which were marked the camera angles of defendant's photographic exhibits Nos. 1 through 34. The plat was sketched before the jury and these various camera angles shown by arrows, but the drawing was excluded as an exhibit and the jury not allowed to take it with them in their deliberations. If this was error, we believe it to be harmless error, since the actual photographs were admitted as exhibits and the rough plat, not drawn to scale, was, if anything, cumulative of the picture evidence and did not add any illumination of vital controverted issues. In that respect, the case of Dallas Ry. & Terminal Co. v. Durkee, Tex.Civ. App., 193 S.W.2d 222, cited by appellant, is distinguishable. Point IV is overruled.

Point of Error No. V asserts error in the court's refusal to allow testimony as to the insignificant cost of bringing the load limit of the main floor of the condemned building within limits required by the City Building Code for M–1 or light manufacturing usage. The building, when taken, was used for commercial sales of radio, television and electronic supplies and appliances, as well as the stocking and repair of those and related merchandise. The testimony offered and excluded, as seen by testimony offered under the bill of exception, would have shown that with an expenditure of approximately $980.00 on the main floor of the building could have been supported and strengthened to the allowable minimum limits for light

manufacturing under the building code. Appellant takes the position that the testimony was admissible to show the acceptability of the property for such usage, or, as stated in the bill, "to show the cost of curing of a curable obsolescence or depreciation, in order to make it achieve a status of its highest and best use". Appellant cites and quotes from State v. Carpenter, 89 S.W.2d 194, a Commission of Appeals opinion adopted by the Supreme Court. This opinion was enlarged by the Supreme Court in City of Austin v. Cannizzo, 267 S.W.2d 808, 815, in which the court states:

"We are unwilling to lay down a hard and fast rule that in arriving at market value consideration may never be given to a use for which property is reasonably suitable and adaptable but which use is presently prohibited by a zoning ordinance. It is a matter of common knowledge that cities frequently lift zoning ordinances or reclassify property in particular zones when the business or wants of the community justifies that type of action in the interest of the general public welfare. At the same time, we cannot announce a rule, except in general terms, that should be applied in all cases where zoning ordinances or other legal restrictions existing at the time of the taking prohibit the use of the property for purposes other than those to which it is devoted. If the trial judge is satisfied from the evidence as a whole that there is no reasonable probability that existing restrictions may be lifted within a reasonable time, he should exclude evidence of value based on use for any purposes other than those to which it is restricted. On the other hand, if it appears reasonably probable to the trial judge that the wants and needs of the particular community may result, within a reasonable time, in the lifting of restrictions, he should admit testimony of present value based on prospective use of the property for

purposes not then available. Whenever such testimony is admitted it would not do violence to the definition of 'market value' suggested in the Carpenter case by adding thereto so as to have it read: You are instructed that the term 'market value' is the price which the property would bring when it is offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity of buying it, *taking into consideration all of the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future.* This definition will permit the jury to give such weight to the probability of the lifting of restrictions as it thinks a prospective purchaser would give."

There are factual differences between these two cases and the one at hand, since the former deal with zoning ordinances and the present case has to do with the City Building Code. We take the principles involved to be the same, however. But in the present case the proffered testimony was not correlated to the time of the taking and the City Building Code was not properly proven up. Nor is there any showing that the expenditure referred to in bringing the property up to the requirements of the building code for M-1 light manufacturing would enhance the market value of the premises. We see no abuse of discretion on the part of the trial court in rejecting the testimony under the circumstances, and we therefore overrule Point No. V.

The appellant complains in Point of Error No. VI that the court erred in denying appellant the opportunity of voir dire examination of appellee's appraisal witness outside of the presence of the jury, thus permitting testimony of the witness on direct examination relative to a "comparable" sale which was shown on cross-examination not to meet the test of comparability, as set out in Point of Error No. VII. When the appellee's appraisal witness was on the stand on direct examination, testifying to the "income approach" to the value of the condemned property, the witness was asked by appellee if he had with him pictures of the properties which he had considered in arriving at his conclusions. The witness presented certain pictures which the court reporter was asked to mark as exhibits. At this point appellant asked that he be allowed to take the witness on voir dire examination in the absence of the jury. He was allowed to take the witness on voir dire, but only in the presence of the jury. The appellant excepted to this ruling and declined to conduct his examination in the presence of the jury. Thereafter the witness went into his "market value" approach to the value of the property and placed this value in round figures as $35,500.00, the exact figure found by the jury in answer to the sole issue. In his direct testimony the appraisal witness used as a comparable the sale of some premises which in the record came to be known as the sale from "Fuentes to Friedman". On cross-examination the appellant brought out that this was a foreclosure sale under a deed of trust and the price paid was $13,675.00, the highest bid. The witness justified his consideration of this sale as a comparable sale by saying that he had confirmed the sale with the purchaser, Friedman, who told him that the price paid was "true market value" and that he "would not have paid a dime more for it". The appraisal witness further testified that he had included this sale in his report as a foreclosure sale. The appellant called the purchaser Friedman to the stand and the latter denied that he had ever at any time made the statement to any person that he considered he had paid full market value for the property he bought. On appellee's cross-examination the purchaser said, "I think I got a steal", and "I think it was worth at least double what I paid for it", and that some appraiser had called him and was told by the purchaser that the property had been a very good buy, that he had paid much less than it was worth but at no time told the caller that he thought that

he had paid the fair market value of the property; that he had bought the property for the land and had torn down the building that was on it, using only some of the walls and part of the foundation and had built a two-story building on the land because he considered it a good corner and valuable for commercial purposes.

We have carefully considered the matters raised in these two points of error—Nos. VI and VII—and have concluded that they must be sustained. Appellee's appraiser indicated that he knew the meaning of market value, having given a fairly accurate definition of the term in the following language: "Market value is the highest price estimated in terms of money that a property would bring if offered for sale in the open market, given a reasonable time for this property to sell and being bought by a purchaser and selling by a seller, neither of which are under any form of duress". The appraiser said he had not tried to keep the nature of this sale back and had outlined in his report that this was a foreclosure sale, so that in all likelihood appellee's attorneys were as fully informed as the appraiser of the character of the transaction, yet the matter went before the jury and the appellant was placed in the position of having to rely on cross-examination to develop his claim to the objectionable qualities of the transaction. This might have been avoided had he been allowed to present his objections on voir dire examination in the absence of the jury. We cannot say that the error thus resulting was harmless, especially since the market value as found by the jury was precisely in the same amount as the rounded-out figure given by this appraisal witness. Robards v. State, 285 S.W.2d 247, 249 (Tex.Civ.App., 1955, ref., n. r. e.). Points Nos. VI and VII are sustained.

Points of Error Nos. VIII through XII relate to the introduction of various State's pictorial exhibits. As stated before, the trial court is accorded considerable discretion in the admission or exclusion of photographic evidence, and since no abuse of such discretion is revealed in these points of error, the same are overruled.

■ Point of Error No. XIII is directed at statements made by or questions on cross-examination asked by counsel for appellee which appellant claims amount to fundamental error. The witness was the Executive Vice-President of appellant company, by whom counsel for appellee was attempting to prove up a letter from the Texas Highway Department to appellant preparatory to the attempted introduction of such letter in evidence. Part of the contents of this letter had been previously excluded and upon objection of appellant's counsel the introduction of the letter was denied at this time. During the cross-examination counsel for appellee asked the witness: "Isn't it a fact, Mr. Grosser, that you and Mr. Shapiro [the President of the company] want to make considerable profit on the building even now after having used it for twenty or thirty years?" Objection was sustained to this inquiry. We feel that these matters were definitely objectionable and the rulings of the court were proper, but we do not feel that the record reflects fundamental error.

Finding no error or need for discussion in Point No. XIV, the same is overruled. This is true also of Point No. XV.

■ By granting appellee's motion in limine to suppress evidence the court ordered the suppression of any evidence, question, answer or allusion whatever to the fact that the United States Government would or might contribute 90% of the cost of acquiring the right of way and of constructing a highway thereon. This is called to our attention by Point of Error No. XVI, with the complaint that counsel for appellee, in jury argument, violated the terms of its own motion and the court's order on several occasions. Appellant points to language used by counsel for appellee such as: " * * * what should the State of Texas pay, and the people of Texas pay, for this building that they are taking for the purpose of building a new highway thereon"; "Now, I tell you, if

the State has to pay for this old property * * *"; "this corporation [appellant] wants the State of Texas to set them up in a new building, to set them up in a new location, a better location, and give them enough money to do it where they won't be out a dime * * *"; "* * * the prices that the State pays in proportion to what it is is the same for all * * *" and the like. This language is improper and should be strictly avoided in the event of another trial, but since objection was not made to the language at the time it was used, nor any bill of exceptions taken, (Prichett v. Highway Insurance Underwriters, 309 S.W.2d 46, 50 (Tex.S.Ct., 1958), Point No. XVI is overruled, as are also Points Nos. XVII, XVIII and XIX, for the same reasons.

Points of Error Nos. XX, XXI and XXII are "shotgun" points and complain of the cumulative effect of the errors set out in the previous points. In view of our decision to reverse and remand this cause for reasons stated above, we find it unnecessary to act under these points or to comment upon the same, and comment is here omitted.

This cause is reversed and remanded to the trial court for new trial.