The STATE of Texas, Petitioner,

v.

SUNLAND SUPPLY CO., Inc., Respondent.

No. A–10905.

Supreme Court of Texas.

June 8, 1966.

Rehearing Denied July 13, 1966.

Waggoner Carr, Atty. Gen., Austin, Robert C. Patterson, Asst. Atty. Gen., for petitioner.

Irion & Rash, El Paso, for respondent.

GREENHILL, Justice.

This is a condemnation case. Commissioners offered Sunland Supply Company $34,100 for its property. Sunland was dissatisfied only with the amount. Upon appeal to the court, the jury awarded Sunland $35,500. Sunland was still dissatisfied. The Court of Civil Appeals sitting at El Paso reversed the judgment of the trial court and ordered a new trial because it considered that the trial court had committed error in refusing to retire the jury and allowing counsel for Sunland to examine a State's appraisal witness upon voir dire outside of the presence of the jury, and had committed fundamental error in admitting testimony as to a so-called "comparable sale." 392 S.W.2d 369. We here reverse the judgment of the Court of Civil Appeals and affirm that of the trial court. Our holding is that it was not error to refuse to retire the jury under the circumstances and that the trial court did not commit fundamental error. We do not reach the question of harm.

The circumstances surrounding the request for the court to retire the jury and permit the voir dire examination were these: The State's witness, Mr. Bart Colwell, qualified as an expert in the field of real estate appraisals. The property taken consisted of a city lot upon which there was an old building. The building had been remodeled into a store. As a predicate for his opinion as to the value of Sunland's property, he stated that there were three ways to arrive at value: (1) the reproduction or cost approach, (2) the income approach, i. e., how much a person would be willing to invest in the property considering its net income, and (3) the market data approach, i. e., the amounts received from sales of comparable property in the vicinity. Mr. Colwell used all three methods.

Using the cost or reproduction method, he assigned $9,000 to the land and $26,829 to the building, and arrived at a total value of $35,829. Using the income approach, he arrived at a value of $35,473 which he rounded out to $35,500.[1] In testifying upon this theory, Mr. Colwell recited the rental paid on several comparable properties, the rentals per square foot, the age and utility of the properties, the taxes and upkeep upon the property, and similar considerations. The testimony was not offered to prove the truth of the rentals received but to show Mr. Colwell's mental processes. It was during this testimony that the request came for the retirement of the jury and voir dire examination. This will be elaborated upon below. Third, he testified as to sales of comparable properties. He listed six sales, one of which was the sale from Fuentes to Friedman which caused the Court of Civil Appeals to reverse the judgment of the trial court. The testimony of Mr. Colwell as to that sale was not challenged. It came in without objection, and there was no motion to strike it after counsel for Sunland developed that this sale was one upon the foreclosure of a mortgage. After having testified as to these six "comparable sales," Mr. Colwell testified that upon the basis of this third method, the property was worth $35,000. After all of the above testimony, his conclusion was that the property was worth $35,500. No objection was made to his conclusion.

1. The building, which was approximately 60 years old and had been remodeled, was at 1200 East Missouri Street in downtown El Paso. It was approximately 60 x 100 feet and contained 11,984 square feet. It was described as a two-story building, but it was brought out that it was of one story with a basement underneath. Colwell estimated an average rental value of 45 cents per square foot with the upstairs perhaps having more value than the downstairs [the basement]. The building was used for the retail sales and service of televisions, radios, phonographs and related equipment. A portion of the "lower floor" was used for storage.

For us to judge the actions of the trial court in the handling of a trial, the particular action complained of on appeal must be put in proper context. Mr. Colwell had testified at some length on his reproduction-cost theory and expressed an opinion of a value of $35,829 which included a value of $9,000 for the land. No objection was made of that conclusion. Then he began his testimony regarding the income approach to value. He was of the opinion that $450 was a reasonable monthly rental value of this property. He was asked if he had pictures of other properties which he considered in arriving at the rental figure. He said he did. At this point, counsel for Sunland requested that the jury be retired and that he be permitted to take Colwell on voir dire examination. The court asked why he wanted the jury retired. Counsel for Sunland said, "As to the comparables * * * he [counsel for the State] asked for the photographs, and he has had the photographs marked for the purpose of handing them to the witness [Colwell] to go into the comparables, and before he goes into the comparables we would like to exercise our right of having the witness on voir dire examination in the absence of the jury." A colloquy between counsel and the court then took place at the bench outside the hearing of the court reporter. The record does not show what reasons were given, or what statements were made. The court's ruling was that counsel for Sunland could take the witness on voir dire before the jury, but the court declined to retire the jury for such purpose. Counsel for Sunland noted an exception, but he said, "I don't want to examine him in the presence of the jury."

Thus the record shows that counsel did not give the court any particular reason why he wanted the jury retired. The sale from Fuentes to Friedman was not then before the court. It had not been mentioned. The testimony before the court was of comparable rentals of property on which there were buildings. In its argument, Sunland connects the request for the voir dire examination to the Fuentes-to-Friedman sale. The Fuentes-to-Friedman sale came up some 170 pages later in the Statement of Facts, and Mr. Colwell regarded that property as vacant land. It was not included in his "income approach."

While the testimony as to the sale from Fuentes to Friedman was not objected to when it was offered, the complaint is that it was not a "comparable sale" because it was not made by a willing seller under no compulsion to sell; it was a sale by a trustee under a deed of trust. Assuming that this matter and these circumstances had been called to the attention of the trial court by voir dire examination at the time the trial court was required to make a ruling, the court would not have been compelled to retire the jury. Assuming that the trustee's sale here would not qualify as a comparable sale, the fact that it was a trustee's sale could have been brought out on voir dire before the jury with no prejudice to anyone; i. e., if the trial court had been asked to rule, and he had ruled that the sale was not comparable, no opinion as to the value of that property or the amount received at the trustee's sale would have gone to the jury.

In matters dealing with mechanics of the trial including the permitting of voir dire examination and the retirement of the jury, the trial court has discretion. Southwestern Bell Telephone Co. v. Johnson (Tex.Sup.1965), 389 S.W.2d 645. We find no abuse of his discretion here and hence no error. Bridges v. City of Richardson (1962), 163 Tex. 292, 354 S.W.2d 366, 367.

Apparently, aside from the question of the retirement of the jury and the right to voir dire examination outside of the hearing of the jury, the Court of Civil Appeals held that the admission of the evi-

dence as to the sale from Fuentes to Friedman, though not objected to and fully exploited on cross examination, constituted a fundamental error. We disagree.

On direct examination, Mr. Colwell testified that he confirmed this Fuentes-to-Friedman sale at $228 per front foot for a total price of $13,675, with the purchaser, Mr. Friedman. The testimony on direct examination was brief and unobjected to. On cross examination, it was brought out at length that this was a trustee's foreclosure sale. Colwell said he knew that, and so carried it on his records; but Mr. Friedman had told him that he had purchased the land for its market value; that Friedman had told him that he wouldn't have paid a dime more for the property. It was developed that the unpaid debt for which the mortgage was foreclosed amounted to $9,000. There had been another bidder at the foreclosure sale. Mr. Friedman had outbid the other person, and the property sold for $13,675.

As the final witness in the trial, Sunland put on Mr. Friedman. He admitted that Colwell (whom he did not know) had called him to ask him about the sale. He said he told Colwell the price, but he denied telling Colwell that he had bid the market price. He testified that he told Colwell he had gotten "a steal" and that he had previously offered $24,000 for the property. On cross examination it was developed that Mr. Friedman was an El Paso attorney who was a friend of the counsel for Sunland. Friedman's and Colwell's credibility was put in issue. No motion was made to strike Colwell's testimony, and no request was made that his testimony be disregarded by the jury. Counsel for Sunland emphasized this portion of Colwell's and Friedman's testimony in his argument to the jury. He argued that Colwell's testimony was unreliable as shown by his testimony regarding the Fuentes-to-Friedman sale.

Assuming that it would have been error to admit, over proper objection, the testimony as to the sale from Fuentes to Friedman, its admission without objection was not a fundamental error. Ramsey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979 (1947); McCauley v. Consolidated Underwriters, 157 Tex. 475, 304 S.W.2d 265 (1957); Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887 (1960); St. Paul Fire & Marine Ins. Co. v. Murphree, 163 Tex. 534, 357 S.W.2d 744 (1962).

■ As this Court stated in Wagner v. Foster, cited just above, the field of fundamental error is a narrow one. That opinion held that it did not extend to lack of proof as to the identity of property, the sufficiency of the description of the property there involved, or questions of "no evidence" to support the judgment. Similarly in the *Murphree* case, supra, it was held that the entry of a judgment upon conflicting findings did not constitute fundamental error. Generally speaking, thus far, this Court has limited its holdings of fundamental error to important matters directly and adversely affecting the public, and to questions of the jurisdiction, particularly jurisdiction of the court over the subject matter of the litigation. See, in addition to the cases above cited, Wagner v. Warnasch, 156 Tex. 334, 295 S.W.2d 890 (1956); Kimbrough v. Walling (Tex.Sup.1963), 371 S.W.2d 691; and Texas Employment Commission v. International Union of Electrical, Radio & Machine Workers, 163 Tex. 135, 352 S.W.2d 252 (1961).

While as was stated in Ramsey v. Dunlop, supra, we will not undertake to give an all-inclusive definition of fundamental error, the admission of the testimony here does not fall within its narrow limits.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.