**Alton M. STEWART et al., Appellants,**

**v.**

**The STATE of Texas, Appellee.**

**No. 7145.**

Court of Civil Appeals of Texas, Beaumont.

April 9, 1970.

Rehearing Denied April 30, 1970.

John L. Fulbright, Beaumont, for appellants.

W. G. Walley, Jr, Beaumont, for appellee.

KEITH, Justice.

The State of Texas condemned 0.462 acres out of a tract containing 0.863 acres to widen State Highway No. 87 near Port Arthur. There was a beer tavern or lounge located upon the portion of the property taken. The verdict of the jury, upon which judgment was based, fixed the market value of the portion taken as $28,150.00; and, since the owner stipulated that there was no damage to the remainder, the judgment followed the verdict.

Stewart complains, by his second point, that there "was no competent evidence or evidence of probative value" to sustain the finding of value in that the amount was lower than that testified by the only "competent" witness, i. e., his witness. Subsidiary points, discussed jointly, raise the question of the insufficiency of the evidence, the theory that the answer is contrary to the great weight and preponderance of the evidence, and that the trial court should have granted a new trial under Texas Rules of Civil Procedure, rule 328 because the amount "was manifestly too small." Our consideration of the evidence will be in accordance with the rule announced in the case of In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

Testifying in his own behalf, Stewart expressed the opinion that the value of the land and the improvements taken was between $70,000.00 and $80,000.00, which he reduced to the smaller figure after using a depreciation factor. Over his objection, he was required to testify that the rentals from the tavern had been only $2,070.00 for the calendar year 1965 and $3,351.00 for the year 1967, his records not being available for the intervening year 1966.[1]

---

1. We overrule, summarily, Stewart's eleventh point complaining of the action of the trial court in requiring him to give such testimony from his income tax returns for the years involved. The ruling came *after* his witness had used the "in-

The expert tendered by Stewart, Hill, approached the question of market value from the three accepted standpoints. Using the cost approach, his opinion was that the property taken was worth $43,-050.00 ($35,000.00 for the building and $8,-050.00 for the land); with the market approach and using one comparable, he arrived at substantially the same figure; whereas, the income approach resulted in a slightly higher valuation, $44,392.00. The State's witness, Spiegel, also used the same three approaches in his evaluation of the property, with these results: Income approach—$21,450.00; Market approach—$22,250.00; and replacement cost of the building, less depreciation to which was added the land value—$22,850.00. The jury did not accept the figures set out by either witness, finding the market value to be $28,150.00, well within the range of the testimony.

Both Hill and Spiegel qualified as experts on valuations in the area and their qualifications are not challenged. All of the contentions advanced by Stewart are answered by the opinion in State v. Haire, 334 S.W.2d 488, 491 (Austin, Tex.Civ.App., 1960, error ref. n. r e.), and cases therein cited. Our review of the evidence leads us, irrevocably to the conclusion that there was not only some evidence. to support the jury's answer to the value issue, but that it was factually sufficient. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.Sup., 1965).

The two cases cited by Stewart[2] are readily distinguishable upon the facts, since in each of the cited cases the evidence received was of a highly speculative nature and included a consideration of an improper element of market value which substantially affected the value of the property. There was no requirement that the jury accept the testimony of Hill; and, in our opinion the points now under consideration do not reflect error. Therefore, points two, three, four, and five are overruled.

In points six and seven, Stewart complains that his witness, Hill, was not permitted to use the so-called "Landry" sale as a comparable. This was the sale of a lounge in the general area of the subject property, but it included the furniture and equipment used in the operation. The Landry sale was a "turn-key" transaction, wherein the land, building, tables, chairs, beer coolers, ice machines, etc., were all lumped into a single sum which the seller was unable to apportion between the real and personal property. It has been held that ordinarily sales of improved lands are not comparable for the purpose of arriving at the value of unimproved lands [Navar v. State, 344 S.W.2d 188, 190 (El Paso, Tex.Civ.App., 1961, no writ)] and when minerals have value, sales of land with minerals are not a fair comparison with lands sold without minerals [State v. Curtis, 361 S.W.2d 448, 450 (San Antonio, Tex.Civ.App., 1962, error ref. n. r. e.)]. We must also apply the well-established rule that it is within the sound discretion of the trial court to determine the fact question of sufficient similarity of the respective properties before admitting the evidence of other sales. Hays v. State,

come" approach to market value and had used a rental value of more than $700.00 per month for the economic life of the building. In the two years for which actual figures were available, the actual rent collected had been only $250.00 per month. It was proper cross-examination and if he did not know how the figures shown on his own income tax return were arrived at, such might be a matter of explanation, but no reason for the exclusion of the testimony. See, State v.

Doom, 278 S.W. 255, 257 (Austin, Tex. Civ.App., 1925, no writ). Stewart's reliance upon Gomez Leon v. State, 426 S.W.2d 562, 563 (Tex.Sup., 1968) is misplaced, there being no similarity in the evidence tendered in the two cases.

2. State v. Zaruba, 418 S.W.2d 499 (Tex. Sup., 1967); and Texas Electric Service Co. v. Linebery, 162 Tex. 570, 349 S.W.2d 105 (1961).

342 S.W.2d 167, 171 (Dallas, Tex.Civ.App., 1960, error ref. n. r. e.).

There was no method available for the trial court, under the record made, to determine how much the parties to the Landry transaction allocated to furniture and fixtures and how much was allocated to the land and the improvements. Under the circumstances, we are of the opinion that the trial court did not abuse his discretion in excluding the testimony from the jury and such points are overruled.

Next, Stewart complains of the exclusion of certain plans and specifications of a building which bore the notation thereon that they had been prepared on March 11, 1969, and approved by him on March 18, 1969, by one Sam Bass who did not testify upon the trial of the case. The date of the taking was February 18, 1969. The plans were offered in connection with the witness, Hill, and upon objection by the State, were excluded. Stewart contends that the introduction of the plans would have allowed "the jury to become acquainted with the details of the construction of the property in arriving at their finding of value." This, it is said, was necessary to offset the "ramshackled" condition of the building which was being taken as shown upon certain pictures offered in evidence by *both* parties. We agree with counsel that some admissible evidence would have been helpful to his cause, as the pictures showed a most dilapidated building sadly in need of repair; but, we do not agree that the plans unauthenticated by any witness were admissible for such purpose.

State's counsel cites Texas Power & Light Company v. Adams, 404 S.W.2d 930, 942 (Tyler, Tex.Civ.App., 1966, no writ) as authority for the correctness of the exclusionary ruling. Indeed, just as in *Adams,* no effort was made to prove either the accuracy or authenticity of the plans in our case. Its exclusion was not error; and, as was said in *Adams* (404 S.W.2d at p. 943),

even if the exclusion was error on the part of the trial court, "it was manifestly harmless." Point eight is overruled.

Stewart complains of the ruling of the trial court in permitting State's witness, Spiegel, to use the so-called Barron sale as a comparable. This was a similar type of business operation located on the outskirts of Beaumont upon U. S. Highway No. 69, just north of its intersection with State Highway No. 105, some twenty-five miles from the location of Stewart's property involved here. The court, in overruling the objection, stated: "This witness can testify that this comparable is used to help him arrive at his opinion, so it's overruled." In so commenting, the able trial judge virtually paraphrased the language of Justice Griffin in State v. Baker Bros. Nursery, 366 S.W.2d 212, 214 (Tex. Sup., 1963). See also, State v. Oakley, 163 Tex. 463, 356 S.W.2d 909, 914 (1962).

The objection of Stewart to the admission of the testimony actually goes to its weight, not to its admissibility. See City of Houston v. Pillot, 105 S.W.2d 870, 872 (Tex.Com.App., 1937, opinion adopted); Hays v. State, supra (342 S.W.2d at p. 171).

The experts had not been able to find many sales of what they considered comparable property in the area. The Barron and Stewart properties were located in the same county, and according to the witness, were comparable in quality. He gave his reasons for contending the two properties were comparable and was cross-examined on the point. Within the rationale of City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808, 815 (1954), the initial determination of the admissibility of the evidence was for the trial court. See also: Rayburn, Texas Law of Condemnation, § 140(2); Bruner v. State, 391 S.W.2d 149, 155 (Fort Worth, Tex.Civ.App., 1965, error ref. n. r. e.). The point is overruled.

State's witness, Spiegel, gave testimony upon direct examination that his

inspection of the building indicated that it was badly in need of maintenance, pointing out such need on one of the pictures which Stewart had offered in evidence.[3] Stewart attempted to cross-examine Spiegel upon the point that no reasonably prudent property owner would make repairs when it was just a question of time until the property would be taken in the condemnation proceeding. State's objection was sustained and the action now is attacked under the tenth point.

We disagree, and overrule the point. There is no contention made that the property could not be repaired because of inability to procure a building permit; and, for aught that appears, it was an economic choice of Stewart's. See in this connection, Urban Renewal Agency of City of Lubbock v. Trammel, 407 S.W.2d 773, 778 (Tex.Sup., 1966). The property belonged to Stewart until it was taken by the State. As a prudent property owner, he made a choice: Would the cost of making the necessary repairs have exceeded the enhanced value of the property in the condemnation proceedings? It must be presumed that he made an intelligent choice not to repair, thereby saving the cost thereof. If he made a mistake in not repairing, that was due to his selection of the alternatives he faced. With impending condemnation, he was charged in law with knowledge of the fact that the single and ultimate issue to go to the jury would be the market value of his property upon the date of the taking. As a reasonably prudent man, he should have known that a building in disrepair would not have as great a value as one which had been maintained properly.[4] For a discussion of maintenance as affecting market value, see City of Denison

v. Corcoran, 253 S.W.2d 321, 324 (Austin, Tex.Civ.App., 1952, no writ). The threat of condemnation did not relieve him of his obligation of using reasonable foresight in the care of his property. Cf. City of Houston v. Biggers, 380 S.W.2d 700, 704 (Houston, Tex.Civ.App., 1964, error ref. n. r. e).

We turn now, finally, to Stewart's first point contending that the trial court erred in refusing to sustain his motion to strike the testimony of State's witness, Spiegel, because he valued the improvements upon the land at replacement cost, less depreciation, rather than reproduction cost, less depreciation. Near the end of Spiegel's testimony, and after he had been examined and cross-examined several times, it did appear that he was speaking of replacement cost as distinguished from reproduction cost. Stewart made no objection in the record, but apparently dictated a formal motion to disregard such testimony to the court reporter for a later filing and inclusion in the transcript.

Assuming that the complaint was not too late [see Housing Authority of City of Galveston v. Henderson, 267 S.W.2d 843, 846 (Galveston, Tex.Civ.App., 1954, no writ)], we are not persuaded that the court erred in admitting the evidence, and the point is overruled. In all condemnation cases wherein improvements are situated upon the land which is taken, the ultimate question is the market value of the land so taken. The value may or may not be, but ordinarily is, enhanced by the presence of buildings upon the land, but such is not the ultimate issue for the determination by the jury. State v. Carpenter, 126 Tex. 604, 89 S.W.2d 979, 980 (on rehearing, 1936).

3. This fact was shown even more graphically upon some of the pictures offered by the State which were also tendered and received in evidence by Stewart's counsel.

4. In "The Proper Measure of Damages in a Total Taking", Proceedings of the

1959 Institute on Eminent Domain, p. 48, it is said that through the use of the willing buyer-willing seller concept of market value, we have borrowed "the reasonably prudent man from tort law and [have] put him into the real estate business."

Appellant contends that only reproduction cost could be used because, if the replacement theory were permitted, it would deprive him of his "constitutional right to just compensation for the taking" of his property. We do not agree. Neither reproduction nor replacement cost was the question for the jury. Nor do we agree that in all instances, reproduction cost would even be admissible. The Court of Appeals of Kentucky in Commonwealth Dept. of Highways v. Stamper, Ky., 345 S.W.2d 640, 643 (1961) (following Nichols on Eminent Domain, Vol. IV, §§ 12.313, 13.11), gave this illustration which is apt:

"If an owner builds an expensive house on land in a slum area the cost of the house is not a fair test of the amount by which the house enhances the market value of the property, because as a practical matter the property will not be marketable for a sum commensurate with the cost of the house. Likewise, if an owner constructs an improvement that is attractive to him, but does not appeal to ordinary buyers, it cannot be considered to have enhanced the value of the property to the extent of the cost of the improvement.

"The same will be true in the case of obsolescence. An old mansion standing in a neighborhood that once was a district of fine residences but since has become commercial or industrial in character cannot be considered to enhance the value of the land on which it stands in accordance with its structural cost."

The trial court did not err in refusing to strike the testimony of Spiegel under the circumstances presented by this point.

Having carefully reviewed the lengthy statement of facts and the briefs of the parties, we are of the opinion that Stewart was deprived of no right to which he was entitled by the law; and, the judgment being correct, is in all things affirmed.