Reba Cox **WESTMORELAND** et vir., Appellants,

v.

**BEAUMONT INDEPENDENT SCHOOL DISTRICT, Appellee.**

No. 7696.

Court of Civil Appeals of Texas, Beaumont.

May 29, 1975.

Rehearing Denied June 12, 1975.

W. G. Walley, Jr., Beaumont, for appellants.

Anthony G. Brocato, Beaumont, for appellee.

STEPHENSON, Justice.

This is an eminent domain case. Reba Cox Westmoreland appeals from a judgment rendered upon the jury verdict.

The only special issue submitted inquired as to the market value of the tract of land taken. The instruction with that issue told the jury it could consider the value of buildings and other improvements on the land to the extent they enhanced the value of the land. The jury answered $40,000.

Only two witnesses testified as to the value of the land. The landowner, Reba Cox Westmoreland, testified as follows: She is a nurse at Baptist Hospital. She was born in a house located on the property in question, which was built in 1910. There is a rent house on the property which was built before the home place. There is also a filling station on the property which was built in the early thirties and which had been rented for $75 per month shortly before this taking in October 1974. She has kept up with the real estate value in Beaumont. In her opinion, the market value of this property on the date of taking was $90,000.

Edwin Terry, a witness called by the School District, testified as follows: He is a real estate appraiser and has been in that field the past twenty-four years. He was employed by the School District to appraise the property in question. The area is an older commercial neighborhood, and the values appear to be going down. The highest and best use of this property is for secondary commercial use. A typical purchaser would probably be buying the land only. The value is in the land itself. Out of the three approaches available—cost, income, and market—the cost approach was most indicative of market value and was given the most credence. The difficulty with the market approach was in finding similar property with similar improvement. In following the cost approach, the first step is to ascertain the value of the land by comparing it with other land sold in the vicinity that is similar. He examined sales that had occurred in the neighborhood. He confirmed a contract of sale of a tract of .517 acre out of the property in this suit, dated March 1974, from these landowners to Howell Liquidating, Incorporated, at a sale price of $8,000 or 36 cents per square foot. That tract did not include the two houses or the filling station. The second comparable is a sale from Michael to Taft, March 17, 1970, containing .944 acre located four or five blocks from the property in question. The consideration was $18,000 or 44 cents per square foot. It had a residence on it, which was moved, and a 2,230 square foot tile building on it which was later used as a grocery store. That building is superior to anything found on the property in question.

It was at this point, over objection, that the trial court permitted Terry to testify to two comparables which were sales of vacant land, one at 19 cents and the other at 20 cents per square foot. The witness then testified as to one additional sale of a tract of land containing an old residence for $7,500 or 34 cents per square foot. He took those sales, plus additional sales, and arrived at a figure of 25 cents per square foot for the property in question, or $35,562. Then, continuing with the cost approach, he estimated the reproduction cost of the improvements, depreciated them, and placed the value at $4,400. Adding the two and rounding it out, he placed the total value at $40,000. Terry then explained the income approach and came up with a value of $40,-392. He also placed the value at $40,000 under the market approach, which included all of the comparables used in the cost approach. He then stated that, in his opinion, the fair market value of this property on the date of taking was $40,000.

On cross-examination, Terry testified as to another sale of a tract of land with an old service station on it, which sold for $8,900 or 67 cents per square foot, with the

old service station worth about $2,000, reducing the value to 51 cents per square foot for the land. Then that last sale following confirmation was $15,000 resulting in a net value of 97 cents per square foot.

The three points of error raised by the landowners all relate to the admission in evidence on direct examination testimony concerning the sales of unimproved land. The trial court had denied a motion in limine as to one of such sales. We are cited three Texas Supreme Court cases in support of these points of error.

The first is Chaney v. Coleman, 77 Tex. 100, 13 S.W. 850 (1890). In this case the trial court excluded evidence as to the value of unimproved land, when the land being taken was improved, and the Supreme Court affirmed such action.

The second case is City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808 (1954). In this case, the property taken was unimproved, and the Supreme Court held that evidence as to prices paid for improved property was not admissible, because they did not meet the test of similarity.

■ The third case is State v. Chavers, 454 S.W.2d 395 (Tex.1970). This case involved the taking of unimproved land, and the trial court admitted evidence as to a sale of improved land. The Supreme Court held that such sale was not comparable and was not admissible. The language of this case makes it clear that an expert may take such type of transaction into consideration as a part of his mental processes in arriving at his opinion as to the market value of the property taken, but cannot testify on direct examination as to the facts of such sale.

■ Counsel for the school district recognizes the rule set forth in the three cases mentioned above, but seeks to distinguish the present case. It is argued first that Chaney v. Coleman, supra, simply holds that if improved land is to be compared to improved land, the improvements must cor-

respond. Then, as to Cannizzo, supra, and Chavers, supra, the rule is that when unimproved land is being taken, evidence as to sales of improved land is not admissible. But, that the converse of that rule has not been held to be true in this state.

We are cited Housing Authority of the City of Dallas v. Hubbard, 274 S.W.2d 165 (Tex.Civ.App.—Dallas 1954, no writ), in which the Court of Civil Appeals held it was not error to allow a witness to testify as to the sale of unimproved land as a comparable in a taking of improved land. The witness allocated a portion of the value to the land and a portion to the improvement, and the court said that testimony did not violate the rule laid down by the Supreme Court that the value of unimproved property may not be determined by comparing its value with improved property.

We are also cited State v. Adams, 489 S.W.2d 398 (Tex.Civ.App.—San Antonio 1972, writ ref'd. n. r. e.), a proceeding to condemn improved land, and the court held that evidence concerning the value of the land alone was admissible.

We cannot agree with the argument of the School District that the converse of the rule of the Chavers Case, supra, is not true. We find no logical reason not to apply the Chavers rule in both situations. We hold that on direct examination testimony as to sale of unimproved property cannot be used as a comparable in a suit involving the taking of improved property.

■ However, having determined the evidence was not admissible does not dispose of the point of error. We still must consider Texas Rules of Civil Procedure, rule 434 in determining whether or not there is reversible error. We have come to the conclusion that under the facts of this case no reversible error is shown.

We have made a careful study of the Chavers Case, supra, especially as to the last point of error discussed on page 398 of

that opinion. Disposition of that point is stated as follows:

"The final question is whether the error was so harmful as to require reversal and a new trial. We look to the entire record to decide if the error was 'reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case.' Gomez Leon v. State, 426 S.W.2d 562, 465 [565] (Tex.Sup.1968). The jury awarded the landowner the contended value of $300 per acre, supported by no sale other than the one from Neal to Anderson. This value was also supported by the independent opinion of the expert witness, but it was the 'three hundred dollar sale' which was repeatedly emphasized by landowner's attorney. We believe the verdict was affected by this incompetent evidence." (454 S.W.2d 398)

■ We do not come to the same conclusion in this case. We do not believe the error complained of was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. As stated at the beginning of this opinion, the only witness to testify for the landowner was the landowner whose occupation was that of a nurse. She stated that in her opinion the market value of this property was $90,000 without giving a basis for that opinion. On the other hand, the witness called by the School District had twenty-four years' experience in real estate and appraising. He testified in great detail as to the methods of appraising, as well as to the facts upon which he based his conclusions. He testified, without objection, to a contract of sale made by these landowners covering a part of the land taken by this suit. The contract of sale entered into by these landowners was for .517 acre of land for $8,000 or thirty-six cents per square foot. However, Terry testified that this .517 acre tract contained more frontage proportionately than the entire tract, and that made it more valuable per square foot. He also emphasized that the larger the tract, the less per square foot a tract of

land, such as this, can be sold for. Terry testified to the sale from Michael to Taft which was an improved comparable. This sale was for forty-four cents per square foot, but that *included* the improvements, which were a residence that was removed and a tile building superior to anything on the property being taken in this case. Then followed the two comparables about which we have held the evidence was not admissible. Terry then testified to another improved comparable which sold for thirty-four cents per square foot and which *included* an old residence. Again, he emphasized the fact that this sale was a lot, 85 x 257.32 feet, and much smaller than the tract taken here, and, therefore, sold for more per square foot. He concluded his direct evidence by stating the value of this property to be $40,000 under the cost approach, income approach, and the market approach. In Chavers the objectionable opinion evidence was supported by the one objectional sale only, while here the expert witness listed three comparables to which there was no objection. It cannot be said that the value found by the jury is outside of the range of the testimony. The expert witness found that value ($40,000) by using all three recognized methods of appraisal, two of which are completely independent of the use of comparable sales. There is no rule of law which says the testimony of value witnesses must include a comparable equal to the market value they arrive at. As stated by this witness, it is almost impossible to find a comparable with the identical improvements, and to hold that if the comparable does not have improvements of the same or a lesser value, that it could not be used, would practically eliminate this type of appraisal.

In the dissenting opinion a table of values is set forth under the headings "Admissible Evidence" and "Inadmissible Evidence." Even a careful reader of that dissent might not realize that two of the three tracts listed under "Admissible Evidence" showing "cents per square foot," *include* the value of

the improvements located upon each tract. A casual reader might be misled into believing the tracts shown under each category can be compared, and that the table demonstrates harm in this case to the landowners. This table appears in the brief filed by the landowners, who, while arguing that improved comparables are not admissible in this case, would use the improved comparable as a method of proving harm. Only the first tract shown under heading "Admissible Evidence" contained no improvements, it being the tract covered by the contract of sale entered into by the landowners. And, as set forth earlier in this opinion, reasons are given why the smaller and better located tract would be worth more per square foot than the tract as a whole.

Throughout Terry's testimony, it was made clear that the value of this property being taken is in the land, which is completely different from the Chavers Case, supra, where most of the value was in the improvements. Also, in Chavers, supra, the Supreme Court found it was reversible error to allow the expert witness to testify as to the allocation related to him by the seller (not a witness) between the value of the land and improvements. In the case before us, the only testimony as to allocation came from the expert witness. We find no reversible error.

Affirmed.

KEITH, Justice (dissenting).

Having found error in the proceedings below; and, after making a "judgment call" from a review of the entire record, the majority finds that there is no reversible error. Ordinarily, I would concur; or, at least, suppress my inclination to dissent. A careful review of the record in this case does not permit even this small luxury. Counsel for the landowner alerted the Court and opposing counsel to the two specific "non-comparables" in his motion in limine but the motion was overruled in the teeth of *State v. Chavers*, 454 S.W.2d 395 (Tex.1970).

Condemnor's attorney, thoroughly familiar with the doctrine of *Chavers*, succeeded in convincing the trial court that the evidence was admissible. This Court, recognizing as it must that the testimony was erroneously admitted, affirms, finding "no reversible error." I do not join in this conclusion.

The first two of the so-called "comparable sales" mentioned by the expert were not within the *Chavers Rule*; each involved the sale of land with improvements thereon, just as does the property involved in this suit. The condemnee had no tenable objection available and the testimony was received without objection. The first was made upon the basis of 36¢ per square foot while the second was upon the basis of 44¢

Upon *direct* examination, over specific objections carefully tailored to invoke the *Chavers Rule*, the expert's testimony as to sales of unimproved land produced valuations of 20¢ and 19¢, respectively, for these two tracts. The receipt of this evidence was clearly error under *Chavers* and the majority—correctly—so holds. The fifth "comparable" mentioned by the expert was improved land with a square foot value of 34¢.

I set out in tabular form the valuations, upon a square foot basis, considered by the condemnor's expert witness:

| Admissible Evidence | Inadmissible Evidence |
| --- | --- |
| Tract One—36¢ | Tract Three—20¢ |
| Tract Two—44¢ | Tract Four—19¢ |
| Tract Five—34¢ | |

Whereupon, and upon the basis of these "non-comparable sales", condemnor's expert witness testified, on *direct* examination, over the landowner's objection, that the subject property of the landowner had a fair market value of 25¢ per square foot, or $35,562. Then, following explicitly the rationale condemned by Justice Reavley in *Chavers*, supra, the expert placed a value on the improvements of $4,400, which he added to the land value. Thus, he arrived at a value of the property with the improvements at the "rounded" figure of $40,000. The jury verdict was precisely that figure— not a cent more or less—just an even $40,000.

Application of the expert's square footage valuation of the true comparables to the property involved in this suit results in the following: *

Tract One (at 36¢ per sq. ft.) ........ Subject property: $51,209.28

Tract Two (at 44¢ per sq. ft.) ........ Subject property: 62,589.12

Tract Three (at 34¢ per sq. ft.) ...... Subject property: 48,364.32

---

In order to procure a reversal of this erroneous judgment, it is only necessary that the landowner establish that the inadmissible evidence was reasonably calculated to and probably did cause the rendition of an improper judgment. *Pittman v. Baladez*, 158 Tex. 372, 312 S.W.2d 210, 216 (1958). I submit that the receipt of the inadmissible evidence in this case was calculated to cause the trial to be materially unfair. Cf. *Tamburello v. Welch*, 392 S.W.2d 114 (Tex.1965); *Perkins v. Freeman*, 518 S.W.2d 532 (Tex.1974).

This Court faced the converse of the situation in *State v. Nesom*, 395 S.W.2d 424, 425 (Tex.Civ.App.—Beaumont 1965, writ ref'd n. r. e.). There, the jury verdict exceeded the maximum estimate of value of the only witness thereon and the court held that the verdict was excessive as a matter of law. The error was cured by requiring a remittitur to the highest value placed thereon by the sole witness. But we have no *additur* authority so that we are unable to correct the error by adding $8,364.32 to the sum found by the jury. Lacking such power, our only recourse is to reverse the judgment and remand the cause for another trial at which time the jury will receive and consider only admissible evidence of value.

The springboard used by the majority in finding that there is no reversible error is to be found in these words:

"As stated at the beginning of this opinion, the only witness to testify for the landowner was the landowner whose occupation was that of a nurse. She stated that in her opinion the market value of this property was $90,000 without giving a basis for that opinion. On the other hand, the witness called by the School District had twenty-four years' experience in real estate and appraising."

In analyzing the quotation, it should be borne in mind that in condemnation suits the opinions of the landowner are admissible. *City of Houston v. Collins*, 310 S.W.2d 697, 704 (Tex.Civ.App.—Houston 1958, no writ); *State v. Loessin*, 343 S.W.2d 494, 503 (Tex.Civ.App.—Austin 1961, writ ref'd n. r. e.); M. Rayburn, *Texas Law of Condemnation, § 128 at 404 (1960).* Likewise, the condemnor's expert witness was shown to be qualified to express his opinion as to the market value of the property.

The charge to the jury in this case set out the correct rule governing the evaluation of testimony: "You [the jury] are the sole judges of the credibility of the witnesses and the weight to be given their testimony . . . ."

It is readily apparent that the jury rejected the opinion testimony of the landowner and accepted that of Terry. This was well within the authority of the jury; but, in determining the existence of harmless error, it is inappropriate for this reviewing court to assume a similar function.

I am unwilling to find "no reversible error" has been shown. The cause should be reversed under the rules adopted for our guidance. See, e. g., *State v. Chavers*, supra (454 S.W.2d at 398); *Gomez Leon v. State*, 426 S.W.2d 562, 565 (Tex.1968).

---

* As noted by the majority, the square foot evaluations shown for tracts two and three were the result of mathematical calculations which the expert reduced by a process of extrapolation: taking the known sales price, he reduced the tract valuation by deducting *his* estimate of the value of the improvements. Tract one, *a part of the property being condemned*, had no improvements thereon.